**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

BRIAN E. SCHMIEGE,

                                        Plaintiff,

         v.

DEPUTY SECURITY STACHOWSKI, et al.,

                                        Defendants.

No. 9:22-CV-1371
(ECC/PJE)

---

**APPEARANCES:**

Brian E. Schmiege
Plaintiff pro se

New York State Attorney General
Syracuse Regional Office
300 South Street – Suite 300
Syracuse, New York 13202
Attorney for defendants

**OF COUNSEL:**

AIMEE COWAN, ESQ.
Assistant Attorney General

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

Plaintiff pro se Brian E. Schmiege ("plaintiff") who was, at the time he commenced this action and when defendants filed their motions for summary judgment,[2] an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of his civil rights. Plaintiff contends that defendants Deputy Security Stachowski ("DSS Stachowski"); Marren, Correction Officer ("Marren") ("C.O."); Pfluger, C.O. ("Pflueger");

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).
[2] Plaintiff was released from DOCCS custody on July 23, 2025.  See Dkt. No. 90.

Howard, C.O. ("Howard"); Hamilton, C.O. ("Hamilton"); Harvey, C.O. ("Harvey"); and Vital, C.O. ("Vitale"), violated his constitutional rights under the First and Eighth Amendments. *See* Dkt. No. 1 at 5-10.[3]  Presently before the Court is defendant Hamilton's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56. *See* Dkt. No. 83.  For the following reasons, it is recommended that Hamilton's motion be granted in part and denied in part.

## I.  **Failure to Respond**

On April 28, 2025, both the Court and defendants notified plaintiff of the pendency of Hamilton's motion and the consequences of failing to respond.  *See* Dkt. Nos. 83-6, 84.  On May 27, 2025, at plaintiff's request, the Court granted him an extension of time to file a response until July 28, 2025.  *See* Dkt. Nos. 88, 89.  On July 25, 2025, at plaintiff's request, the Court granted plaintiff a second extension of time to file a response until August 27, 2025.  *See* Dkt. Nos. 90, 91.  To date, plaintiff has failed to respond to Hamilton's motion.

"The fact that there has been no response to a summary judgment motion does not . . . mean that the motion is to be granted automatically."  *Calderon v. Doe*, No. 9:20-CV-0645 (GLS/CFH), 2021 WL 6278740, at *1 (N.D.N.Y. Nov. 24, 2021), *report and recommendation adopted,* No. 9:20-CV-0645 (GLS/CFH), 2022 WL 43918 (N.D.N.Y. Jan. 5, 2022) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)).  "Even in the absence of a response, defendant is entitled to judgment only if the material facts demonstrate his entitlement to judgment as a matter of law."  *Id*. (citing *Champion*, 76

---

[3] Plaintiff initially sought to bring this complaint against several other individuals and entities.  *See* Dkt. No. 1.  The matter was transferred from the Western District of New York, and on initial review, the Court sua sponte dismissed numerous claims pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  *See* Dkt. Nos. 4, 10.

F.3d at 486; Fed. R. Civ. P. 56(c).  "A verified complaint is to be treated as an affidavit . . . and [may] be considered in determining whether material issues of fact exist[.]"  *Id*. (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020)).  Plaintiff's complaint is signed and includes a statement wherein plaintiff certifies that the information contained in the complaint is "to the best of [his] knowledge, information, and belief."  Dkt. No. 1 at 11.  Therefore, the undersigned will accept the pleading as an affidavit to the extent that the statements in plaintiff's complaint are based on plaintiff's personal knowledge or are supported by the record. *See Berry v. Marchinkowski*, 137 F.Supp. 3d 495, 530 (S.D.N.Y. 2005) (noting that in light of special solicitude, courts may consider unsworn assertions on a motion for summary judgment where they are based on the plaintiff's personal knowledge).

Moreover, "the facts set forth in defendant's Rule 56.1(a) Statement of Material Facts are accepted as true as to those facts that are not disputed by [plaintiff's complaint]," deposition testimony, and opposition to defendant Hamilton's motion for summary judgment.  *Calderon*, 2021 WL 6278740, at *1 (citing N.D.N.Y. L.R. 56.1(b) ("The Court may deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not specifically controvert.")); *see* Dkt. Nos. 1, 57, 64.

## II.  **Facts**[4]

### A.  **Undisputed Facts**

---

[4] Hamilton's motion for summary judgment references and cites evidence not submitted as part of his motion papers and contained elsewhere in the record.  *See generally* Dkt. No. 83.  "[T]he Court may consider evidence outside the pleadings on a motion for summary judgment." *Sullivan v. Maha*, No. 16-CV-552 (FPG), 2018 WL 3962818, at *2 (W.D.N.Y. Aug. 17, 2018) (citing Fed. R. 56).

Plaintiff was incarcerated at Auburn Correctional Facility ("Auburn CF") in July 2022 and August 2022, and at Five Points Correctional Facility ("Five Points CF") at different times between June 4, 2021, and September 19, 2023.  *See generally* Dkt. No. 57-5; Dkt. No. 57-7; Dkt. No. 57-9.  Auburn CF and Five Points CF had fully functioning grievance procedures in July 2022 and 2022, respectively.  *See* Dkt. No. 57-5 at 1-2, ¶5; Dkt. No. 57-7 at 1-2, ¶5.  Plaintiff was familiar with the grievance and appeals process at Auburn CF.  *See* Dkt. No. 83-5 at 5; Dkt. No. 57-14 at 36.  While incarcerated at Auburn CF and Five Points CF, plaintiff filed seventy-six facility-level grievances.  *See* Dkt. No. 57-5 at 2, ¶8; Dkt. No. 57-7 at 2, ¶8.  Additionally, plaintiff has appealed eighty-one facility-level grievances to CORC.  *See* Dkt. No. 57-9 at 2, ¶8.  Yet, plaintiff has not appealed any grievance to CORC alleging excessive force at Auburn CF.  *See* Dkt. No. 57-9 at 2-3, ¶9.

Plaintiff did not file any grievances at either Auburn CF or Five Points CF alleging that he was assaulted or Hamilton used excessive force against him on July 27, 2022, while incarcerated at Auburn CF.  Dkt. No. 83-5 at 3-4; Dkt. No. 57-14 at 63; Dkt. No. 57-5 at 2; Dkt. No. 57-7 at 2.  Plaintiff did file a grievance on July 27, 2022, but the grievance does not reference "any incident during which [he] contends that excessive force was used against him on July 27, 2022, while incarcerated at Auburn" CF.  Dkt. No. 83-5 at 3; *see* Dkt. No. 57-14 at 70-71.

## B.  **Plaintiff's Facts**

Plaintiff testified that on March 19, 2020, Marren sexually assaulted him, and Marren, Harvey, and two other C.O.s[5] physically assaulted him when he tried to defend

---

[5] Plaintiff does not identify the two other C.O.s who allegedly assaulted him in March 2020.

himself.  *See* Dkt. No. 57-14 at 64-68, 124-25.  Plaintiff states that he was knocked unconscious during the assault and spent sixty-seven days in a coma.  *See id*. at 67-68.[6]

On July 27, 2022, Pflueger, Marren, Vitale, Howard, and Harvey assaulted plaintiff in his cell.  *See* Dkt. No. 1 at 6; *see* Dkt. No. 57-14 at 42, 47-48.  Plaintiff claims that these defendants tackled him to the floor, physically assaulted him, and shaved off all of his hair.  *See id*.  After the alleged assault, plaintiff was told that he "better hold down the ass whoopin [sic] they just gave [him] or [he'll] be killed [and] have a weapon planted on [his] person or [his] cell [sic]."[7]  Dkt. No. 1 at 6, 28.  Pflueger, Marren, Hamilton, and Harvey were present when he "was told to hold it down, the ass whooping [he] had just gotten, and that they . . . wouldn't retaliate, [he] wouldn't get a ticket, and that they wouldn't, in short terms, fucking kill [him] if [he] just held it down and did the right thing."  Dkt. No. 57-14 at 58.  Plaintiff states that the C.O.s who assaulted him in March 2020 were the same C.O.s who assaulted him on July 27, 2022.  *See* Dkt. No. 1 at 8, ¶1.

On August 5, 2022, plaintiff wrote a letter to DOCCS Commissioner Annucci regarding the July 27, 2022, assault, informing him that these were the same C.O.s who assaulted him in March 2020.  *See* Dkt. No. 1 at 27.  On August 7, 2022, plaintiff wrote a letter to nonparty Captain Gilmore requesting an interview with the Office of Special Investigations ("OSI") "for an assault that was done to [him]."  *Id.* at 23.

Plaintiff states that on August 8, 2022, nonparty inmate Quick approached him and "threatend [sic] to break [his] jaw [and] kill [him] because the C.O.'s [sic] were complaining to him 'Quick' [sic] that [he] was a problem [and] [he was] making D-Block-5 company 'hot' by dropping grievances [and] writing letters to Deputy Security Stachowski [and]

---

[6] Plaintiff does not, in this action, seek to pursue any claims arising directly from the 2020 incident.
[7] Plaintiff does not specify who made this statement.

5

Superintendent Corey about [him] being a victim of a racist hate crime [and] [him] being violently assaulted by C.O.'s [sic] back on 3/19/2020." Dkt. No. 1 at 7-8. On August 11, 2022, plaintiff wrote a letter to Deputy Security Stachowski claiming that he feared for his "life [and] safety due to being targeted [and] harassed by the same C.O.'s [sic] that beat [him] into a coma on 3/19/2020 [and] now they are sending prisoners after [him]." *Id.* at 31.

On August 12, 2022, Howard, Hamilton, Marren, Vitale, and Pflueger ordered Quick to "assault [plaintiff] [and] stab [him] to death." Dkt. No. 1 at 8. Plaintiff witnessed Harvey and Hamilton approach nonparty inmate Quick's cell and speak to Quick, but he could not hear their conversation. *See* Dkt. No. 57-14 at 101-103. Approximately twenty to thirty minutes later, Quick assaulted plaintiff and stabbed him nine times. *See id.* at 101-05. At the time of the assault, Marren, Harvey, Hamilton, Vitale, and Pflueger were standing at the end of company, where plaintiff's cell was located. *See id.* at 94-95.

On August 31, 2022, plaintiff filed a grievance at Five Points CF alleging that on August 12, 2022, he was

> violently assaulted & [sic] stabbed #9 [sic] time's [sic] by a prisoner at Auburn C.F. who was told to kill [him] by orders of Security Staff at Auburn C.F. that [he] sued & [sic] was awarded a huge settlement at trial on 8/10/2022 & [sic] the Security Staff [he] sued [were] also facing criminal charges from the 3/19/2020 incident that this lawsuit arose from . . .

Dkt. No. 57-15 at 4. However, the facility Superintendent denied the grievance. *See id.* at 5. Plaintiff appealed to CORC, but CORC upheld the Superintendent's determination and denied his grievance. *See id.* at 1.

### C. Hamilton's Statement of Material Facts

6

Hamilton did not assault "plaintiff on July 27, 2022, or any other day." Dkt. No. 83-5 at 2 (citing Dkt. No. 83-3 at 1). Hamilton was not at Auburn CF on July 27, 2022, and did not interact with plaintiff that day. *See id*. (citing Dkt. No. 83-3 at 1). On July 27, 2022, Hamilton's shift was covered by C.O. Denny Peebles ("Peebles"). *See id*. (citing Dkt. No. 83-3 at 2). Hamilton's bi-weekly timecard for the period July 21, 2022, to July 27, 2022, states under the section labeled "July 27, 2022," "Swap Off Peebles," meaning that Peebles was assigned to work Hamilton's shift on that particular day. *Id*. (citing Dkt. No. 83-3 at 1-2).

Plaintiff "did file a grievance alleging that he was assaulted by another incarcerated individual on August 12, 2022, because the incarcerated individual was 'told to kill [him] by orders of security staff at Auburn . . . .'" Dkt. No. 83-5 at 4 (quoting Dkt. No. 57-15 at 4). The grievance does not refer to any defendants in this action "and does not contend that the August 12, 2022, assault occurred in retaliation for letters he wrote in August 2022." *Id*. "The grievance makes no mention as to who he alleges were involved either in allegedly directing another incarcerated individual to assault him, or who he alleges he 'sued and was awarded a huge settlement at trial.'" *Id*. (quoting Dkt. No. 57-15 at 4). "Hamilton was not interviewed or discussed at all in conjunction with the investigation of plaintiff's grievance." *Id*. "The Superintendent's response [to plaintiff's August 12, 2022, grievance] specifically states that plaintiff was uncooperative with an interview, refusing to speak with the sergeant, and that no staff were identified in his grievance, so his allegations could not be substantiated." *Id*. at 4-5 (citing Dkt. No. 57-15 at 5). "When plaintiff was interviewed by supervisory staff, he refused to speak to them or provide any

7

further information to assist them in their investigation." *Id*. at 5 (citing Dkt. No. 57-15 at 6).

## III. **Arguments**

Hamilton argues that he is entitled to summary judgment as matter of law because plaintiff failed to exhaust his administrative remedies before commencing this action. *See* Dkt. No. 83-1 at 4-12. Hamilton first addresses plaintiff's Eighth Amendment excessive force claim. *See id*. at 7-8. Hamilton argues that Auburn CF had a fully-functioning grievance procedure in July 2022, and Five Points CF had a fully-functioning grievance procedure in 2022 generally, but plaintiff did not file a grievance alleging excessive force on July 27, 2022, at either Auburn CF or Five Points CF. *See id*. at 7; Dkt. No. 57-5 at 1-2; Dkt. No. 57-7 at 1-2. Hamilton also argues that the letters plaintiff wrote to DOCCS Commissioner Annucci regarding the alleged July 27, 2022, assault, and to Captain Gilmore regarding an OSI interview are insufficient to satisfy the exhaustion requirement. *See id*. Hamilton asserts that "plaintiff unequivocally testified that he was familiar with the grievance and appeals process and had previously filed other grievances about different issues," and never alleged that the grievance procedures at Auburn CF or Five Points CF "were 'dead ends' or 'so opaque' as to be rendered incapable of use." *Id*. at 8. (first citing Dkt. No. 57-14 at 36, then citing Dkt. No. 80 at 30-31). As such, Hamilton argues that the first and second *Ross* exceptions are inapplicable to this claim. *Id*. at 8.

Hamilton next addresses plaintiff's First Amendment retaliation claim. *See* Dkt. No. 83-1 at 8-12. Hamilton concedes that plaintiff filed a grievance following the August 12, 2022, assault, but asserts that the grievance (1) fails to name Hamilton; (2) "does not contend that the August 12, 2022, assault occurred in retaliation for the letters [plaintiff]

8

wrote in August 2022"; and (3) does not "alleg[e] that [Hamilton] retaliated against him." *Id*. at 8-9 (citing Dkt. No. 57-5 at 3; Dkt. No. 57-7 at 3).

Hamilton argues that "[w]here a facility is not properly alerted to the existence of a claim and therefore fails to investigate it, an inmate has not substantially exhausted administrative remedies regarding the claim." Dkt. No. 83-1 at 9 (citing Solano v. Aubin, No. 9:20-CV-1378 (BKS/ML), 2023 WL 5200397 (N.D.N.Y. Aug. 14, 2023) (citing Albritton v. Morris, No. 13-CV-3708, 2018 WL 1609526 (S.D.N.Y. Mar. 29, 2018))). Hamilton argues that "plaintiff's grievance did not lend itself to a review of, or decision on, any retaliation claims made against any defendants, including Officer Hamilton." *Id*. at 10 (citing Dkt. No. 57-15 at 4.). Hamilton claims that plaintiff's grievance "makes no mention . . . as to who he alleges were involved either in allegedly directing another incarcerated individual to assault him, or who he alleges he 'sued and was awarded a huge settlement at trial.'" *Id*. (citing Dkt. No. 57-15 at 4.). Hamilton further claims that "[t]he grievance packet, which details the facility's response, confirms that the facility was not properly alerted to the existence of a retaliation claim against those defendants and therefore failed to investigate it." *Id*. at 10-11. Hamilton asserts that he was not interviewed after plaintiff filed his grievance and "the Superintendent'[s] response specifically states that plaintiff was uncooperative with an interview, refusing to speak with the sergeant, and that no staff were identified in his grievance, so his allegations could not be substantiated." *Id*. at 11 (citing Dkt. No. 57-15 at 5). Hamilton also argues that the first and second *Ross* exceptions are inapplicable to this claim because "there is nothing in the record to suggest that DOCCS' grievance procedure was a dead end, that corrections officials prevented plaintiff from filing a grievance, or that the grievance procedure was so confusing that

9

plaintiff could not discern the necessity of appealing to CORC." *Id*. (internal quotation marks omitted).

Alternatively, Hamilton argues that plaintiff's claims should be dismissed in their entirety on the merits. *See* Dkt. No. 83-1 at 12-19. Hamilton argues that plaintiff's Eighth Amendment excessive force must fail because he was not working at Auburn CF on July 27, 2022, and therefore, he could not have assaulted plaintiff that day. *See id*. at 12. In support of this argument, Hamilton submits a copy of his bi-weekly timecard indicating that the notation under July 27, 2022, states, "Swap Off Peebles," meaning that CO Peebles covered his shift that day. *Id*. (quoting Dkt. No. 83-4).

Finally, Hamilton argues that plaintiff cannot establish all three elements needed to succeed on a First Amendment retaliation claim. *See* Dkt. No. 83-1 at 14-19. First, Hamilton contends that plaintiff has not demonstrated that he engaged in a protected activity. *See id*. at 15-16. Hamilton notes that Plaintiff testified that he and other officers, "incited" another inmate to attacked him "in retaliation for letters [he] wrote in August 2022 that related to a March 2020 incident." *Id*. at 15 (quoting Dkt. No. 57-14 at 112). Hamilton refutes plaintiff's testimony, arguing that when plaintiff was asked to clarify who he sent the August 2022 letters to, plaintiff could not specify whether the letters were written to Deputy Superintendent Stachowski, Superintendent Cory, or his counselor. *See id*. at 15-16. Additionally, Hamilton argues that the August 2022 letters were never delivered or received by Deputy Superintendent Stachowski or Superintendent Cory. *See id*. at 16 (citing Dkt. No. 57-4 at 2).

Second, Hamilton argues that plaintiff failed to demonstrate that he took any adverse action against plaintiff. Dkt. No. 83-1 at 16. Hamilton concedes that he was

10

present at Auburn CF on August 12, 2022, and "assisted plaintiff after the incident while other officers placed the other involved incarcerated individual in mechanical restraints," but denies that he "ever direct[ed] or request[ed] that another incarcerated individual assault plaintiff." *Id*. (citing Dkt. No. 83-3 at 2).

Third, Hamilton states that plaintiff has not demonstrated a casual connection between his protected conduct and any adverse action that Hamilton took. *See* Dkt. No. 83-1 at 16-19. Hamilton asserts that he "is unaware of any complaints/grievances plaintiff filed against him prior to August 12, 2022," and "even if he was aware of" the eleven other grievances plaintiff filed against other C.O.s in the four months prior to the August 12, 2022, incident, plaintiff has not established any basis that Hamilton would or did retaliate on behalf of the other C.O.s. *Id*. at 18-19.

Plaintiff did not response to Hamilton's motion.

## IV.  **Legal Standards**

On review of defendants' motion for summary judgment, the facts will be related in the light most favorable to plaintiff as the nonmoving party. *See Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").

A motion for summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of disputed material facts by citing to "the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  FED. R. CIV. P. 56(c).  A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (citation omitted); *see Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "When ruling on a summary judgment motion, the district court . . . must resolve all ambiguities and draw all reasonable inferences against the movant."  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003) (citation omitted).  Still, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)); *see also Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citation omitted).

Where a party seeks judgment against a pro se litigant, or a pro se litigant moves for summary judgment, the Court must afford the pro se litigant special solicitude.  *See Treistman*, 470 F.3d at 477.  As the Second Circuit explained,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must

12

be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[ ]" . . . ..

*Id.* (citations omitted); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (citations and quotation marks omitted).

## V. **Discussion**

### A. **Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust any available administrative remedies before bringing an action for claims arising out of their incarceration. *See* 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. *See id.* at 524. "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he is incarcerated." *Adams v. Annucci*, 537 F. Supp. 3d 475, 477-78 (W.D.N.Y. 2021); *see Jones v. Bock*, 549 U.S. 199, 218 (2007) (explaining that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules . . . rules that are defined not

13

by the PLRA, but by the prison grievance process itself.") (internal citations and quotations omitted).

"Failure to exhaust administrative remedies under the PLRA is an affirmative defense, and thus the defendants have the burden of proving that [the plaintiff's] claim has not been exhausted[.]" *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted). A defendant satisfies this burden by "establishing . . . that a grievance process exists[,]" and that the plaintiff failed to use the grievance procedure. *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (citing *Mojias v. Johnson*, 351 F.3d 606, 610 (2d Cir. 2003), and *Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir. 1999)). "However, once a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable." *Coleman v. Nolan*, No. 9:15-CV-40 (ATB), 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (citing *Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013)).

Once it is determined that a plaintiff has failed to exhaust his or her administrative remedies, "the Court must assess whether administrative remedies were available to" the plaintiff. *Stephanski v. Allen*, No. 9:18-CV-0076 (BKS/CFH), 2020 WL 806331, at *7 (N.D.N.Y. Jan. 22, 2020), *report and recommendation adopted*, 2020 WL 777268 (N.D.N.Y. Feb. 18, 2020). "[T]he ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendants." *Nelson v. Plumley*, No. 9:12-CV-422 (TJM), 2015 WL 4326762, at *8 (N.D.N.Y. July 14, 2015) (citations omitted). However,

"'the burden of production' may shift to a plaintiff when a court considers whether the grievance process was unavailable[.]" *Coleman*, 2018 WL 4732778, at *4.

Here, there is no genuine dispute that, at all relevant times, DOCCS had in place a three-step inmate grievance program. *See* 7 N.Y.C.R.R. § 701.5. First, the inmate must file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within twenty-one (21) calendar days of the alleged incident. *See id.* § 701.5(a). The IGRC then "has up to 16 calendar days after a grievance is filed to resolve [the grievance] informally." *Id*. § 701.5(b)(1). If there is no informal resolution, the IGRC conducts a hearing "within 16 calendar days after receipt of the grievance" and issues a written recommendation "within two working days" after the conclusion of the hearing. *Id*. § 701.5(b)(2); (b)(3)(i).

Second, if the inmate is dissatisfied with the IRGC's decision, the inmate may appeal the IGRC's decision to the facility's superintendent. *See* 7 N.Y.C.R.R. § 701.5(c)(1). To initiate such appeal, the inmate "must complete and sign the appeal section on the IGRC response form . . . and submit it to the grievance clerk within seven calendar days after receipt of the IGRC's written response." *Id*. For matters concerning institutional issues, "the superintendent shall render a decision on the grievance and transmit said decision, with reasons stated, to the grievant, the grievance clerk, and direct party, if any, within 20 calendar days from the time the appeal was received." *Id*. § 701.5(c)(3)(ii). "If a [IRGC] decision is not implemented within 45 days, the grievant may appeal to CORC citing lack of implementation as a mitigating circumstance." *Id.* § 701.5(c)(4). Alternatively, "[i]f no appeal is filed upon denial by the IGRC, it will be presumed that the grievant or direct party accepts the committee's recommendation." *Id.* § 701.5(c)(1).

15

Third, the inmate may appeal the superintendent's decision to the CORC. *See* 7 N.Y.C.R.R. § 701.5(d)(1)(i). To initiate an appeal to CORC, the inmate "must complete and sign [the necessary forms] and submit [them] to the grievance clerk within seven calendar days after receipt of the superintendent's written response to the grievance." *Id*. The IGRC Supervisor "must forward appeals within seven calendar days to . . . CORC." *Id*. § 701.5(d)(1)(ii). Upon receipt of an appeal, CORC "shall review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the grievant, the grievance clerk, the superintendent, and any direct parties within 30 calendar days from the time the appeal was received." *Id.* § 701.5(d)(3)(ii). It is only after CORC renders a final decision, and the inmate receives that final decision, that the administrative remedies available to the inmate/claimant are exhausted. *See Torres v. Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009).

Viewing the evidence in the light most favorable to the plaintiff as the non-moving party and affording him special solicitude, plaintiff failed to rebut or raise a question of material fact regarding Hamilton's assertion that plaintiff did not file a grievance or properly exhaust his administrative remedies concerning his claim that he was subjected to excessive force on July 27, 2022. *See Wright*, 554 F.3d at 266; *see also Hicks*, 593 F.3d at 166. Conversely, plaintiff raises a question of material fact as to whether Hamilton retaliated against him on August 12, 2022. *See id*.

1. **Excessive Force**

Plaintiff alleges that Hamilton assaulted him on July 27, 2022. *See* Dkt. No. 1 at 6. Plaintiff testified that he was familiar with the grievance and appeal process at Auburn CF and filed several grievances prior to July 27, 2022. *See* Dkt. No. 57-14 at 36.

16

However, plaintiff conceded at his deposition that he did not file a grievance relating to the July 27, 2022, assault. *See id*. at 63. The record contains a grievance dated July 27, 2022, but this grievance does not reference assault that allegedly took place that day. *See* Dkt. No. 57-17. Rather, the grievance alleges that an "unknown C.O." harassed and targeted plaintiff over plaintiff's haircut. *Id*. When asked about this inconsistency, plaintiff testified, "Yeah, no, I didn't mention the assault part. I do admit to that on the record. I did not mention that in this." Dkt. No. 57-14 at 71.

Plaintiff also testified, contradictorily, that he filed a grievance for excessive force following the July 27, 2022, assault; was "pretty sure" and "almost certain" of doing so; and claimed that he "over exhausted all my remedies in a formal fashion." Dkt. No. 57-14 at 64, 72; Dkt. No. 64 at 7. However, the record lacks any evidence supporting plaintiff's claims or indicating that plaintiff filed a grievance relating to the July 27, 2022, assault. Plaintiff fails to state the date on which he filed his grievance or provide any identifying information of the individual or office with whom he filed his grievance. Plaintiff does not refute the declarations of IGP Supervisor Parmiter, IGP Supervisor Schultz, or IGP Director Seguin that he filed no grievances against Hamilton at either Auburn CF or Five Points CF alleging excessive force on July 27, 2022, or appealed any such grievance to CORC. *See* Dkt. No. 57-5 at 2; Dkt. No. 57-7 at 2; No. 57-9 at 2.

This Court has granted summary judgment on exhaustion grounds where the plaintiff alleged a "completely unsupported, unclear and vague implication that . . . he attempted to file" a grievance, and the plaintiff "provided no specifics regarding when the grievances were written, their content, or the steps he took to provide them to an officer to send to the grievance office . . . [or] documentary evidence to corroborate the fact

plaintiff attempted to file a grievance, such as follow-up correspondences . . . ." *Simpson v. Price*, No. 9:19-CV-1413 (MAD/ATB), 2021 WL 7367083, at *9 (N.D.N.Y. Dec. 29, 2021), *report and recommendation adopted,* No. 9:19-CV-1413 (MAD/ATB), 2022 WL 336540 (N.D.N.Y. Feb. 4, 2022); *see also Jackson v. Moore*, No. 9:21-CV-1001 (GTS/ATB), 2023 WL 4710869, at *4 (N.D.N.Y. Apr. 14, 2023), *report and recommendation adopted,* No. 9:21-CV-1001 (GTS/ATB), 2023 WL 4711091 (N.D.N.Y. July 24, 2023) (granting summary judgment on exhaustion grounds where the plaintiff made a conclusory allegation and did not include any direct evidence, documentary evidence, or corroborating testimony about the underlying incident, when he filed his grievance, who he filed his grievance with, or what steps he took to follow up on his grievance after he did not receive a response); *Cf. Johnson v. Owens*, No. 9:20-CV-0982 (AMN/CFH), 2023 WL 5351017, at *7 (N.D.N.Y. Aug. 21, 2023) (denying summary judgment on exhaustion grounds where the plaintiff's grievance was unfiled and unanswered, but the plaintiff detailed how he drafted two grievances, placed them on his cell door for a corrections officer to pick up, and never received a response after being "transferred to a different facility shortly after delivering his grievances to the corrections officer . . . ."); *Fann v. Graham*, No. 9:15-CV-1339 (DNH/CFH), 2018 WL 1399331, at *6 (N.D.N.Y. Jan. 11, 2018), *report and recommendation adopted,* No. 9:15-CV-1339 (DNH/CFH), 2018 WL 1399340 (N.D.N.Y. Mar. 19, 2018) (citing *Williams v. Correction Officer Priatno*, 829 F.3d 118, 126 (2d Cir. 2016)) (denying summary judgment on exhaustion grounds where the plaintiff's "grievances were submitted, but were unfiled and unanswered[,]" and the plaintiff detailed the underlying allegations, submitted copies of his grievance and notice to appeal to CORC, and expressed his desire to appeal);

*Stephanski*, 2020 WL 806331, at *9 (denying summary judgment on exhaustion grounds where the plaintiff supported his allegations with a proper response to the defendants' statement of material facts, testimony under oath on two separate occasions, and some corroborating documentary evidence).

Further, plaintiff has not corroborated his claim by providing a copy of any grievance or grievance decision from a facility superintendent at Auburn CF or Five Points CF regarding an incident of excessive force on July 27, 2022.[8]  *See* Dkt. No. 64 at 2; *see also, e.g.*, *Gibbs v. Gadway*, No. 9:19-CV-281 (GTS/DJS) 2019 WL 5191506, at *3, *5 (N.D.N.Y. Oct. 15, 2019), *report and recommendation adopted*, 2020 WL 1227156 (N.D.N.Y. Mar. 13, 2020) (concluding that the plaintiff's conclusory claim alleging exhaustion was subject to dismissal where copies of grievance appeals allegedly filed were not submitted as evidence) (citing cases); *Blake v. Porlier*, No. 9:18-CV 1008 (DNH/CHF), 2019 WL 7484052, at *5 (N.D.N.Y. Oct. 4, 2019), *report and recommendation adopted*, 2020 WL 58613 (N.D.N.Y. Jan. 6, 2020) (same); *see also Sankara v. Montgomery*, No. 9:16-CV-0885 (FJS/TWD), 2018 WL 4610686, at *8 (N.D.N.Y. June 25, 2018), *report and recommendation adopted*, 2018 WL 3408135 (N.D.N.Y. July 13, 2018) ("[The p]laintiff has submitted no documentary evidence whatsoever that supports his conclusory assertion that he submitted grievances . . . or demonstrates any follow up on

---

[8] There is an "expedited procedure for complaints raising bona fide issues of harassment[,]" which includes claims of excessive force, "which bypasses the IGRC, and initially refers the grievance to the facility superintendent or his designee for prompt review, investigation, and decision." *Smith v. Miller*, No. 9:20-CV-1435 (GTS/CFH), 2021 WL 6503602, at *2, n.6 (N.D.N.Y. Nov. 18, 2021), *report and recommendation adopted,* No. 9:20-CV-1435 (GTS/CFH), 2022 WL 160312 (N.D.N.Y. Jan. 18, 2022) (quoting *Ferguson v. Mason*, No. 9:19-CV-927 (GLS/ATB), 2021 WL 862070, at *2 (N.D.N.Y. Jan. 7, 2021), *report and recommendation adopted,* 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021) (citing 7 N.Y.C.R.R. § 701.8). Plaintiff did not avail himself of the grievance procedure, expedited or otherwise. *See generally* Dkt. No. 1. Plaintiff has not alleged, or demonstrated, that he filed a grievance, received a decision from the Superintendent, or appealed to CORC. *See id.*

his part when he allegedly received no response."). As plaintiff did not file a grievance for the July 27, 2022, assault, he failed to satisfy the first step of the inmate grievance process, and, therefore, did not exhaust his administrative remedies for his claim alleging excessive force. *See* 7 N.Y.C.R.R. § 701.5(a); *Torres*, 672 F.Supp. 2d at 344.

Even assuming, *arguendo*, that plaintiff demonstrated a question of fact that he filed a grievance alleging excessive force arising out of the July 27, 2022, incident, the record does not indicate that he attempted to fully exhaust at either Auburn CF or Five Points CF. Plaintiff testified that he received a response to his grievance and appealed the grievance all the way to CORC. *See* Dkt. No. 57-14 at 64. However, the record does not contain copies of his grievance, the superintendent response, an appeal of the superintendent response, or the CORC decision. *See Gibbs*, 2019 WL 5191506, at *3 ("In light of the documented proof that no such appeal was filed, such a conclusory statement is insufficient to create a material question of fact on this Motion.") (citations omitted). Therefore, plaintiff has not satisfied the PLRA's exhaustion requirements. *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Feliz v. Johnson*, No. 9:17-CV-1294 (DNH/ATB), 2019 WL 5197216, at *4 (N.D.N.Y. June 6, 2019), *report and recommendation adopted*, 2019 WL 3491232 (N.D.N.Y. Aug. 1, 2019) ("[I]f a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA.") (citations omitted); *Cf. Clark v. Gardner*, No. 9:17-CV-0366 (DNH/TWD), 2021 WL 1200328, at *25 (N.D.N.Y. Mar. 8, 2021), *report and recommendation adopted*, No. 9:17-CV-366, 2021 WL 1198199 (N.D.N.Y. Mar. 30, 2021) (concluding that the plaintiff raised a question of fact as to whether he filed a grievance

20

where the plaintiff submitted a sworn affidavit that he gave his grievance to a corrections officer, mailed a copy of the grievance to his attorney, and provided copies of the grievance and the cover letter sent to his attorney).

The record also contains letters that plaintiff wrote to DOCCS Commissioner Annucci detailing the July 27, 2022, assault and to nonparty Captain Gilmore requesting an interview with OSI.  *See* Dkt. No. 1 at 23, 27.  A liberal reading of these letters could suggest that plaintiff is arguing that either the letter to Commissioner Annucci or his request for an OSI investigation constitutes an informal complaint, such that Auburn CF administrators were put on notice of plaintiff's underlying excessive force allegations, satisfying the exhaustion requirement.  However, this argument also lacks merit.  This Court has previously held that

> to the extent [the] plaintiff may suggest that an informal complaint to the Office of Special Investigations constitutes proper exhaustion, such an argument would undoubtedly be misplaced. It is well-established that any informal resolution or relief outside of the administrative procedures does not satisfy exhaustion requirements in the Second Circuit.

*Haywood v. Fuller*, No. 9:18-CV-01097 (MAD/DEP), 2019 WL 1639743, at *5 (N.D.N.Y. Apr. 16, 2019), *report and recommendation adopted,* No. 9:18-CV-01097 (MAD/DEP), 2019 WL 2442142 (N.D.N.Y. June 12, 2019) (citing *Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) ("Regardless of whether . . . informal complaints put the prison officials on notice of his grievance '*in a substantive sense*' . . . to satisfy the PLRA a prisoner must also *procedurally* exhaust his available administrative remedies.")), *Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (noting that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"); *see also Harris v. Travers*, No. 9:20-CV-1482 (GTS/DJS), 2023 WL 4708122, at *4 (N.D.N.Y.

June 12, 2023), *report and recommendation adopted,* No. 9:20-CV-1482 (GTS/DJS), 2023 WL 4708113 (N.D.N.Y. July 24, 2023) ("Informal complaints to prison officials do not constitute proper exhaustion.") (quoting *Hale v. Rao*, 768 F. Supp. 2d 367, 376 (N.D.N.Y. 2011)); *see also James v. Doty*, No. 9:17-CV-1145 (MAD/CFH), 2019 WL 1474309, at \*5 (N.D.N.Y. Jan. 4, 2019), *report and recommendation adopted,* No. 9:17-CV-1145 (MAD/CFH), 2019 WL 457694 (N.D.N.Y. Feb. 6, 2019) (holding that "because . . . letters were sent to officials outside the grievance chain of command, they do not satisfy the exhaustion requirement.).  Therefore, to the extent plaintiff's letters might be interpreted to suggest that he intended the letter to Commissioner Annucci or an OSI investigation to substitute for a formal IGRC grievance, these claims fail as such a letter, investigation request, or informal complaint is insufficient to satisfy the exhaustion requirement.

## 2.  **Retaliation**

On August 31, 2022, plaintiff wrote a letter titled "Grievance Complaint," alleging that "Security Staff at Auburn C.F." directed the August 12, 2022, assault, and the C.O.s who directed the attack were the same C.O.s who assaulted him in March 2020 and who he sued on two separate occasions.  Dkt. No. 57-15 at 4.  Hamilton acknowledges that "[p]laintiff did file a grievance following the August 12, 2022, assault."  Dkt. No. 83-1 at 8 (citing Dkt. No. 57-15).  However, Hamilton argues that "plaintiff's grievance fails to refer to any of the defendants . . . and does not contend that the August 12, 2022, assault occurred in retaliation for letters he wrote in August 2022.  Further, he did not file any grievances alleging that any officers retaliated against him."  Dkt. No. 83-1 at 8-9 (citing Dkt. No. 57-5 at 2-3; Dkt. No. 57-7 at 2-3).  Hamilton claims that plaintiff's grievance also does not allege who he sued and against whom he "'was awarded a huge settlement at

trial.'"  *Id*. at 10 (quoting Dkt. No. 57-15 at 4).  Hamilton asserts that "[w]here a facility is not properly alerted to the existence of a claim and therefore fails to investigate it, an inmate has not substantively exhausted administrative remedies regarding that claim." *Id*. at 9 (citing *Solano*, 2023 WL 5200397, at *7 (citing *Albritton*, 2018 WL 1609526)). Hamilton also argues that he was not "interviewed or discussed at all in conjunction with the investigation of plaintiff's grievance."  *Id*. at 11.

The undersigned concludes that Hamilton's argument is both legally and factually incorrect.  First, plaintiff is not required to identify the individuals he accused of misconduct in the August 31, 2022, grievance.  *See Espinal v. Goord*, 558 F.3d 119, 127 (2d Cir. 2009) (citing *Jones*, 549 U.S. at 218) ("Where New York's grievance procedures do not require prisoners to identify the individuals responsible for alleged misconduct, neither does the PLRA for exhaustion purposes.")).  Rather, New York State regulations require that "the grievance . . . contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint, *i.e.,* specific persons/areas contacted and responses received."  7 N.Y.C.R.R. § 701.5(a)(2).

Second, Five Points CF and the CORC characterized the August 22, 2022, grievance as one for retaliation.  *See* Dkt. No. 57-15 at 1, 3, 5.  The IGP decision states that plaintiff's grievance alleged that the August 12, 2022, assault occurred because facility "security" told another inmate to kill plaintiff because "[he] filed a lawsuit against staff and won."  *Id*. at 5.  The Five Points CF "Case History and Record" repeats these allegations.  *See id*. at 3.  The CORC decision, under "Title of Grievance," lists "Security Staff Ordered Assault At Auburn CF."  *Id*. at 1.

Additionally, Hamilton states that Five Points CF was "not properly alerted to the existence of a retaliation claim against those defendants and therefore failed to investigate it." Dkt. No. 83-1 at 11. However, the IGP decision states that Five Points CF attempted to investigate plaintiff's claims, but plaintiff was uncooperative, refused to speak with the sergeant, and did not identify any facility staff involved in the incident. *See* Dkt. No. 57-15 at 5. Hamilton conflates his argument of failure to investigate with plaintiff's refusal to cooperate with Five Points CF's investigation and the Five Points CF Superintendent's conclusion that, "based on his investigation, [plaintiff's] allegations could not be substantiated." *Id*.

As plaintiff appealed the August 22, 2022, grievance to CORC and received a final decision from CORC, the undersigned concludes that plaintiff exhausted his administrative remedies with respect to his retaliation claim. *See* Dkt. No. 57-15 at 1, 3, 5; *see also Woodford*, 548 U.S. at 93; *Feliz*, 2019 WL 5197216, at *4.

B. **Availability of Administrative Remedies: Excessive Force**

Since Hamilton has demonstrated that plaintiff failed to exhaust his administrative remedies for his excessive force claim, the undersigned must next assess whether administrative remedies were available to plaintiff. To successfully allege unavailability, "[a]n inmate must point to some affirmative action by a prison official that prevented the inmate from availing himself of the grievance procedures." *Martinaj v. Uhler*, No. 9:18-CV-257 (BKS/DJS), 2021 WL 3793769, at *7 (N.D.N.Y. Aug. 26, 2021) (citing *Grafton v. Hesse*, 783 F. App'x 29, 31 (2d Cir. 2019) (summary order) ("We have held that where there has been no affirmative action by prison staff actually preventing prisoners from pursuing administrative remedies, those remedies are not unavailable under the PLRA.")

24

(citing *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 178 (2d Cir. 2006))).   Examples of prison officials' affirmative acts include verbal and physical threats of retaliation, denial of "forms and writing materials, and a refus[al] to accept or forward [the] plaintiff's appeals." *Perez v. Furina*, No. 9:10-CV-518 (TJM/CFH), 2016 WL 1237863, at *3 (N.D.N.Y. Jan. 19, 2016), *report and recommendation adopted,* No. 9:10-CV-518, 2016 WL 1238243 (N.D.N.Y. Mar. 29, 2016) (citing *Ruggiero*, 467 F.3d at 175); *see also Amador v. Andrews*, 655 F.3d 89, 103 (2d Cir. 2011) (holding that "verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute such affirmative action.") (citing *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004) *overruled on other grounds* by *Hemphill v. New York*, 595 U.S. 140 (2022), and *Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir. 2004)); *see also Cicio v. Alvarez*, No. 19-CV-9883 (CS), 2022 WL 1003796, at *5 (S.D.N.Y.  Apr. 4, 2022) ("Specific threats of retaliation or intimidation by prison employees can render administrative remedies unavailable.") (quoting *Lutz v. Francisco*, No. 9:20-CV-240 (GTS/DJS), 2020 WL 9264825, *5 (N.D.N.Y. Dec. 10, 2020)).

"[T]he PLRA requires 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly . . . .'" *Ruggiero*, 467 F.3d at 176 (2d Cir. 2006) (quoting *Woodford*, 548 U.S. at 90; quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (additional internal quotation marks omitted).  The PLRA's "exhaustion requirement hinges on the 'availability' of administrative remedies."  *Ross v. Blake*, 578 U.S. 632, 642 (2016) (brackets omitted) (*quoting Booth v. Churner*, 532 U.S. 731, 738 (2001)).  "An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."  *Id.*  Availability means "an inmate is required to exhaust those, but

only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (*quoting Booth*, 532 U.S. at 738).

There are "three kinds of circumstances in which an administrative remedy . . . is not capable of use to obtain relief." *Ross*, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* (citing *Booth*, 532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive," but "illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry." *Thomas v. Waugh*, No. 9:13-CV-0321 (MAD/TWD), 2018 WL 3121622, at *10 (N.D.N.Y. Feb. 28, 2018), *report and recommendation adopted,* No. 9:13-CV-00321, 2018 WL 1508563 (N.D.N.Y. Mar. 27, 2018) (citing *Williams*, 829 F.3d at 123 n.2 (2d. Cir. 2016) and *Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016)).

Although plaintiff does not specifically raise the issue of unavailability, liberally construing plaintiff's complaint, deposition testimony, and opposition papers to the other defendants' motion for summary judgment and applying due solicitude, plaintiff essentially alleges that the grievance process was unavailable because he feared that Hamilton

26

would physically retaliate against him following the July 27, 2022, assault.  *See* Dkt. No. 1 at 6; Dkt. No. 57-14 at 58.

### 1. **Excessive Force**

As stated, plaintiff's complaint alleges that after he was assaulted on July 27, 2022, he was told that he "better hold down the ass whoopin [sic] they just gave [him] or [he'll] be killed [and] have a weapon planted on [his] person or [his] cell."  Dkt. No. 1 at 6; Dkt. No. 1 at 28 ("I was . . . told to hold down the ass whopping I just got if I don't want another fabricated ticket written on me or a weapon planted on me or in my cell.").  Plaintiff further testified that Pflueger, Marren, Hamilton, and Harvey were present when he "was told to hold it down, the ass whooping I had just gotten, and that they— that they wouldn't retaliate, I wouldn't get a ticket, and that they wouldn't, in short terms, fucking kill me if I just held it down and did the right thing."  Dkt. No. 57-14 at 58.

Although plaintiff does not specify who made the statement, assuming *arguendo*, that Pflueger, Marren, Hamilton, or Harvey made the statement, this statement would normally satisfy the third *Ross* exception and render the grievance procedure unavailable. *See Ross*, 578 U.S. at 643; *see also Hunter v. Rouse*, No. 9:20-CV-65 (LEK/DJS), 2020 WL 8474744, at *4 (N.D.N.Y. Sept. 17, 2020), *report and recommendation adopted*, 2021 WL 101083 (N.D.N.Y. Jan. 12, 2021) (holding that the plaintiff's allegation that a defendant "told him that if he told 'anyone what happened, the next time [the plaintiff] won't walk away[,]'" was "more than a generalized fear of retaliation[,]" and, therefore, "sufficiently reasonable to render administrative remedies unavailable."); *Galberth v. Durkin*, No. 9:14-CV-0115 (BKS/ATB), 2014 WL 7409915, at *8 (N.D.N.Y. Dec. 31, 2014) (holding that the defendants' threats that the plaintiff "would be beaten within an inch of his life" if he told

anyone about the alleged assault was more than a generalized fear of retaliation and excused the plaintiff's failure to exhaust).

Whether one of the defendants or a nonparty made such a statement, plaintiff filed at least six grievances at Auburn CF between July 30, 2022, and August 8, 2022; a grievance on August 31, 2022, against the corrections officers he claims were involved in the August 12, 2022, assault; and twenty-five additional grievances at Five Points CF between September 1, 2022, and September 19, 2023.  *See* Dkt. No. 57-5 at 5-8; Dkt. No. 57-7 at 5-7; Dkt. No. 57-15 at 4.  "[T]he Second Circuit has concluded that when an inmate files a grievance, notwithstanding the threats of retaliation and intimidation of which that inmate complains, the failure to fully exhaust under the PLRA will not be excused on this ground."  *Grant v. Kopp*, No. 9:17-CV-1224 (GLS/DEP), 2019 WL 368378, at *6 (N.D.N.Y. Jan. 3, 2019), *report and recommendation adopted,* No. 9:17-CV-1224 (GLS/CFH), 2019 WL 367302 (N.D.N.Y. Jan. 30, 2019) (citing *McNab v. Doe*, 686 F. App'x. 49, 51 (2d Cir. 2017) (summary order), *affirming* 2016 WL 324994 (N.D.N.Y. Jan. 27, 2016) (Suddaby, C.J.)).  In reaching this conclusion, the Second Circuit noted that:

> [Plaintiff] asserted that defendants tried to intimidate him, and intimidation can excuse the failure to exhaust. However, none of the actions allegedly taken by the defendants actually prevented [plaintiff] from submitting his complaint letter. [Plaintiff] was able to take the first step in the grievance process, and nothing in the record suggests he was intimidated from taking the next step (appealing the rejection of his informal grievance).

*McNab*, 686 F. App'x at 51 (internal citations omitted).

The undersigned concludes that because plaintiff continued to avail himself of the grievance procedure immediately following these threats, plaintiff was not prevented from "taking advantage of a grievance process through machination, misrepresentation, or

intimidation." *Ross*, 578 U.S. at 644. Thus, plaintiff has failed to show unavailability on this ground. *See id*.

### 2. **First and Second *Ross* Exceptions**

Plaintiff has not alleged that the grievance procedures at either Auburn CF or Five Points CF were "dead end[s]" or "so opaque" as to be rendered "incapable of use." *Ross*, 578 U.S. at 643. Further, plaintiff testified that he was familiar with the grievance procedure and appeals process and filed grievances about unrelated matters. *See* Dkt. No. 57-14 at 36. Plaintiff has filed seventy-six facility-level grievances and appealed eighty-one facility-level grievances to CORC. *See* Dkt. No. 57-5 at 2; Dkt. No. 57-7 at 2; Dkt. No. 57-9 at 2. "This shows that Plaintiff did not view the filing of grievances as a dead end. It also demonstrates that he clearly understood DOCCS' inmate grievance policy and could navigate it when he wished to pursue a grievance." *Walker v. Ball*, No. 9:16-CV-437 (DNH/DJS), 2018 WL 1415212, at *5 (N.D.N.Y. Feb. 16, 2018), *report and recommendation adopted,* No. 9:16-CV-437 (DNH/DJS), 2018 WL 1406632 (N.D.N.Y. Mar. 20, 2018). "As such, the first two exceptions identified under *Ross* are not applicable here." *Id*. (citing *Gonzalez v. Coburn*, No. 6:16-CV-06174 (MAT), 2017 WL 6512859, at *6 (W.D.N.Y. Dec. 20, 2017) ("Plaintiff's decision to affirmatively participate at all three levels in the inmate grievance program demonstrates that the program was neither a dead-end nor so opaque that Plaintiff could not avail himself of it.")).

### 4. **Time to File a Grievance has Expired**

The alleged incident of excessive force occurred on July 27, 2022. *See* Dkt. No. 1 at 5-6. Plaintiff had until August 17, 2022, to file a grievance with the IGRC. *See* 7 N.Y.C.R.R. § 701.5(a) ("An inmate must submit a complaint to the clerk within 21 calendar

29

days of an alleged occurrence on an inmate grievance complaint form."). The record does not indicate, and plaintiff has not asserted, that he requested an extension of time to file his grievance. *See* 7 N.Y.C.R.R. § 701.6(g)(1) (An inmate may file a request for an extension of time to file a grievance within forty-five days of the alleged incident.).

"Ordinarily, the proper remedy where a prisoner has failed to satisfy the exhaustion requirement is to dismiss the complaint without prejudice, to give the inmate a chance to exhaust his administrative remedies and then refile his complaint." *Robinson v. Harder*, No. 9:21-CV-01322 (DNH/CFH), 2024 WL 1469076, at *9 (N.D.N.Y. Feb. 20, 2024) (quoting *Brown v. Napoli*, No. 08-CV-6477L (DGL), 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009; citing *Chisholm v. N.Y.C. Dep't of Corr.*, No. 08-CV-8795, 2009 WL 2033085, at *3 (S.D.N.Y. July 13, 2009)). "This is so even when the issue is decided on a motion for summary judgment." *Mateo v. Corebine*, No. 09-CV-4811 (RJH/DCF), 2010 WL 3629515, at *7 (S.D.N.Y. Sept. 17, 2010) (collecting cases). However, if an inmate has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile. *See Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004); *see also Richard v. LeClaire*, 9:15-CV-0006 (BKS/TWD), 2019 WL 5197041, at *9 (N.D.N.Y. May 6, 2019) ("Because [the p]laintiff's failure to exhaust is at this point incurable, the Court recommends that summary judgment for failure to exhaust administrative remedies be with prejudice."), *report and recommendation adopted*, 2019 WL 4233184 (N.D.N.Y. Sept. 6, 2019).

Plaintiff's failure to exhaust his available administrative remedies relating to the claim of excessive force on July 27, 2022, is no longer curable. The time for plaintiff to

30

exhaust his administrative remedies has expired.   It is recommended that Hamilton's motion for summary judgment be granted as to plaintiff's claim of excessive force, and that this claim be dismissed with prejudice.[9]  *See Berry*, 366 F.3d at 88.

## C.  **Retaliation**

### 1.  **Legal Standard**

To establish a First Amendment retaliation claim, an incarcerated plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)); *see also Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).   "If a plaintiff establishes these elements, a defendant may still avoid liability by establishing that he would have taken the adverse action even in the absence of the protected conduct."  *Morrow v. Bauersfeld*, No. 21-2928-CV, 2022 WL 17097590, at *1 (2d Cir. Nov. 22, 2022) (quoting *Brandon*, 938 F.3d at 40 (internal quotations omitted)).

Inmate retaliation claims should be viewed "with skepticism and particular care, given that virtually any adverse action taken against a prisoner by a prison official — even those otherwise not rising to the level of a constitutional violation — can be characterized as a constitutionally proscribed retaliatory act."  *Smith v. New York State*, No. 23-6601-CV, 2024 WL 4746554, at *3 (2d Cir. Nov. 12, 2024) (quoting *Dolan v. Connolly*, 794 F.3d

---

[9] As the undersigned concluded that plaintiff failed to exhaust his administrative remedies before commencing this action, it is not necessary for the undersigned to reach the merits of defendants' arguments for the excessive force.  *See Porter v. Uhler,* No. 9:17-CV-47 (MAD/TWD), 2019 WL 2479000, at *16 (N.D.N.Y. Feb. 19, 2019), *report and recommendation adopted,* No. 9:17-CV-47 (MAD/TWD), 2019 WL 1292226 (N.D.N.Y. Mar. 21, 2019), *aff'd,* 790 F. App'x 329 (2d Cir. 2020) ("Because the Court is recommending that summary judgement be granted to Defendants on this claim for failure to exhaust administrative remedies, the Court declines to reach the parties' remaining arguments.").

290, 295 (2d Cir. 2015) (internal quotation marks and citation omitted)).  Thus, such claims must be "supported by specific and detailed factual allegations." *Id.*  However, "direct evidence of retaliatory intent is not required to overcome summary judgment on a First Amendment retaliation claim." *Fabrizio v. Rielly*, No. 9:20-CV-0011 (GTS/ML), 2022 WL 18402299, at *10 (N.D.N.Y. Dec. 15, 2022), *report and recommendation adopted,* No. 9:20-CV0011 (GTS/ML), 2023 WL 356204 (N.D.N.Y. Jan. 23, 2023) (quoting *Vaher v. Town of Orangetown*, 133 F. Supp. 3d 574, 596 (S.D.N.Y. 2015) (internal quotation marks omitted)).  "[C]ircumstantial evidence alone can be sufficient to meet th[e] burden of proof for a retaliation claim."  *Booker v. Griffin*, No. 16 CIV. 00072 (NSR), 2024 WL 756166, at *14 (S.D.N.Y. Feb. 23, 2024) (quoting *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 236 (S.D.N.Y. Apr. 22, 2005)).

"An adverse action is defined as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Brandon*, 938 F.3d at 40. (citing *Davis*, 320 F.3d at 353).  "Otherwise, the retaliatory act is simply *de minimis,* and therefore outside the ambit of constitutional protection." *Encarnacion v. Connors*, No. 9:21-CV-00986 (MAD/TWD), 2023 WL 6546247, at *13 (N.D.N.Y. Aug. 7, 2023), *report and recommendation adopted,* No. 9:21-CV-986 (MAD/TWD), 2023 WL 6057393 (N.D.N.Y. Sept. 18, 2023) (citation omitted).

"[E]valuating causal connection in the context of a retaliation claim is a fact-specific inquiry."  *Williams v. Cuomo*, No. 21-CV-1180 (LJV), 2024 WL 2702206, at *4 (W.D.N.Y. May 24, 2024) (citing *Espinal*, 558 F.3d at 129).  "In determining whether a causal connection exists between a plaintiff's protected activity and a prison official's actions" the Court may consider: "(i) the temporal proximity between the protected activity and the

32

alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation." *Waters v. Jacobsen*, No. 9:18-CV-196 (MAD/ML), 2020 WL 1527054, at *6 (N.D.N.Y. Mar. 31, 2020) (quoting *Cole v. New York State Dep't of Corr. Servs.*, No. 9:10-CV-1098, 2012 WL 4491825, *11 (N.D.N.Y. Aug. 31, 2012)). "No bright line test has been drawn to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Fabrizio*, 2022 WL 18402299, at *10 (quoting *Espinal*, 558 F.3d at 129) (internal quotations omitted). Still, "courts in the Second Circuit have held that an adverse action taken as much as eight months after the protected activity indicated a causal connection." *Burrell v. DOCCS*, 655 F. Supp. 3d 112, 130 (N.D.N.Y. 2023) (quoting *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980)).

a. **Protected Activity**

Plaintiff's many grievances, litigation against various officials at Auburn CF, and writing letters to Auburn CF and DOCCS officials constitute protected conduct. *See* Dkt. No. 1 at 19-32; Dkt. No. 57-16. *See Fabrizio*, 2022 WL 18402299, at *9 (citing *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) (summary order) (holding that submitting a grievance is constitutionally-protected conduct)); *see also Brandon*, 938 F.3d at 40 (citing *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003) ("The filing of prison grievances is a protected activity.")); *Houston v. Zen Zen*, 388 F. Supp. 2d 172, 174 (W.D.N.Y. 2005) ("The filing of lawsuits or prison grievances is a constitutionally protected activity.") (citing *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) and *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir.1988)).

33

b.  **Adverse Action**

Between April 15, 2022, and July 15, 2022, plaintiff filed eleven grievances.  *See* Dkt. No. 64 at 10.  On August 5, 2022, plaintiff wrote a letter to Commissioner Annucci.  *See* Dkt. No. 1 at 27.  On August 7, 2022, plaintiff wrote a letter to Captain Gilmore.  *See id*. at 26-27.  On August 11, 2022, plaintiff wrote a letter to DSS Stachowski.  *See id.* at 31-32.

On August 8, 2022, nonparty inmate Quick approached plaintiff and "threatend [sic] to break [his] jaw [and] kill [him]" because the C.O.s at Auburn CF were complaining about how plaintiff filed grievances and wrote letters to DSS Stachowksi.  Dkt. No. 1 at 7-8.  On August 12, 2022, plaintiff witnessed Harvey and Hamilton speak with nonparty inmate Quick approximately twenty to thirty minutes before Quick assaulted plaintiff and stabbed him nine times.  *See* Dkt. No. 57-14 at 101-102; Dkt. No. 1 at 8.  Plaintiff stated that Marren, Harvey, Hamilton, Vitale, and Pflueger were standing at the end of company where plaintiff's cell was located and witnessed the assault.  *See* Dkt. No. 57-14 at 94-95.

The undersigned concludes that a reasonable fact-finder could find that C.O.s instructing an inmate to assault another inmate in retaliation for the inmate's filing of grievances and writing letters to facility administrators constitutes an adverse action.  *See Brandon*, 938 F.3d at 42-43 (holding that a jury "could conclude that an inmate of ordinary firmness would be deterred from filing additional grievances if doing so would place him in harm's way and at the mercy of other inmates. We do not doubt that exposing a prisoner to potential assault by another inmate can constitute an adverse action."); *see also Pusepa v. Annucci*, No. 17-CV-1765 (RA), 2019 WL 690678, at *15 (S.D.N.Y. Feb. 19,

2019) ("[A] correction officer who orchestrates rather than directly commits a violent act against an inmate may commit an adverse action for retaliation purposes.") (citation omitted)).

### c. **Hamilton**

In support of his motion, Hamilton submits a declaration stating that he "was present at [Auburn CF] on August 12, 2022, and [he] assisted plaintiff after the incident while other officers placed the other involved incarcerated individual in mechanical restraints." Dkt. No. 83-3 at 2. Hamilton denies "ever directing or requesting that another incarcerated individual assault plaintiff." *Id*. He also states that he is "unaware of any complaints plaintiff filed in August 2020 about an alleged March 2020 assault" and "unaware of any complaints/grievances plaintiff filed against [him] prior to August 12, 2022." *Id*.

As stated above, plaintiff alleges that on August 12, 2022, Howard, Hamilton, Marren, Vitale, and Pflueger ordered nonparty inmate Quick to "assault [plaintiff] [and] stab [him] to death." Dkt. No. 1 at 8. Platiniff testified that he witnessed Harvey and Hamilton approach nonparty inmate Quick's cell and speak to Quick, but he could not hear their conversation. *See* Dkt. No. 57-14 at 101-103. Shortly thereafter, Quick assaulted plaintiff and stabbed him nine times. *See id.* at 101-05. Plaintiff also testified that immediately prior to the assault, Marren, Harvey, Hamilton, Vitale, and Pflueger were standing at the end of company, where plaintiff's cell was located. *See id.* at 94-95. Plaintiff testified that during the assault, he saw Hamilton and the other defendants at the end of his company, "straight ahead . . . just standing there." Dkt. No. 14 at 93, 96. Plaintiff stated, "[t]hey were just standing there, watching it [sic]. They weren't trying to

help me. They weren't trying to protect me, nothing [sic]. They stood there and let it happen." *Id*. at 105.[10]

Based on the foregoing, there is a genuine question of material fact as to whether Hamilton instructed Quick to assault plaintiff and whether Hamiton was present and witnessed the August 12, 2022, assault. *See Wright*, 554 F.3d at 266.

This Court has previously granted summary judgment where the plaintiffs' bare testimonies were refuted by sworn affidavits and documentary evidence. In *Johnson v. Brown*, the plaintiff filed a Section 1983 lawsuit claiming excessive force after C.O.s allegedly assaulted him. *See Johnson v. Brown*, No. 9:09-CV-0002 (GTS/DEP), 2011 WL 1097864, at *1 (N.D.N.Y. Mar. 22, 2011). The plaintiff testified that he saw the defendants during the assault but provided no other support for his claim. *See id*. at 6. In support of their motion for summary judgment, the defendants proffered sworn affidavits and their time sheets, establishing that, at the time of the alleged assault, one defendant was in a different part of the facility and "never [saw] or [spoke] to [the] Plaintiff at that time[,]" and

---

[10] Plaintiff testified that Marren, Hamilton, Harvey, Vitale, and Pflueger witnessed the August 12, 2022, assault and failed to intervene. *See* Dkt. No. 57-14 at 105. However, this allegation does not appear in plaintiff's complaint, supporting documentation, or opposition to defendants' motion for summary judgment. *See generally* Dkt. No. 1; Dkt. No. 64. To the extent that this testimony could be read as seeking to raise a claim alleging failure to protect, plaintiff has not stated that he filed a grievance alleging Marren, Hamilton, Harvey, Vitale, and Pflueger failed to protect him. Further, even assuming *arguendo*, that plaintiff's complaint properly raised a claim alleging failure to protect against Marren, Hamilton, Harvey, Vitale, and Pflueger, he has not alleged, nor has he shown, that he filed a grievance alleging failure to protect or exhausted such a claim. *See Edwards v. Pistner*, No. 10-CV-0322, 2015 WL 7288697, at *4-5 (W.D.N.Y. Nov. 17, 2015) (holding that the plaintiff failed to exhaust his failure to protect claim because he failed to file a grievance and exhaust the three-step IGRC grievance process); *Chambers v. Mason*, No. 9:20-CV-128 (DNH/DJS), 2021 WL 6205553, at *3 (N.D.N.Y. Dec. 3, 2021), *report and recommendation adopted,* No. 9:20-CV-128, 2022 WL 19358 (N.D.N.Y. Jan. 3, 2022) (citing *Lurch v. Bui*, 2020 WL 8450543, at *4 (N.D.N.Y. Dec. 8, 2020), *report and recommendation adopted sub nom. Lurch v. Jones*, 2021 WL 392486 (N.D.N.Y. Feb. 4, 2021)("Plaintiff's failure to protect claim is one that must be exhausted under the PLRA."). Accordingly, the undersigned will not address this claim further because plaintiff did not raise this claim in his complaint, file a grievance alleging failure to protect against Marren, Hamilton, Harvey, Vitale, and Plueger, nor did he demonstrate that he fully exhausted such a grievance before commencing this suit. *See Torres*, 672 F.Supp. 2d at 344; *Simpson*, No. 2021 WL 7367083, at *9; *Jackson*, 2023 WL 4710869, at *4; *Gibbs,* 2019 WL 5191506, at *3; *Sankara*, 2018 WL 4610686, at *8.

the other defendant was away on vacation. *See id*. at 7. In granting the defendants' motion for summary judgment, the Court determined that the "Plaintiff's only evidence establishing the occurrence of the assault . . . is his self-contradictory, incomplete deposition testimony that is wholly unsupported by the record." *Id*. The Court further concluded that the defendants' testimony, which was corroborated by documentary evidence, refuted the plaintiff's unsupported testimony. *See id.*

Similarly, in *McMaster v. LaBarge*, the plaintiff claimed that several C.O.s assaulted and raped him. *See McMaster v. LaBarge*, No. 9:15-CV-578 (DNH/CFH), 2018 WL 4212033, at *7 (N.D.N.Y. Apr. 10, 2018), *report and recommendation adopted,* No. 9:15-CV-578 (DNH/CFH), 2018 WL 4211912 (N.D.N.Y. Sept. 4, 2018). The plaintiff alleged that he was "face down" during the assault and the movant "stood behind him." *Id*. The defendant supported his motion for summary judgment with a declaration stating that he was not at the facility on the night of the alleged incident and a copy of his time card documenting that he switched shifts with another C.O. *See id*. The Court granted the movant's motion for summary judgment, holding that the "plaintiff has not produced evidence creating a genuine issue of material fact as to whether [the defendant] was present during the alleged . . . assault." *Id*.; *see also Louis-Charles v. Baker*, No. 9:16-CV-1417 (MAD/CFH), 2018 WL 5728054, at *10 (N.D.N.Y. July 30, 2018), *report and recommendation adopted sub nom. Louis-Charles v. Barker*, No. 9:16-CV-1417 (MAD/CFH), 2018 WL 4299982 (N.D.N.Y. Sept. 10, 2018) (granting summary judgment where the plaintiff "failed to produce evidence, aside from his conclusory allegations" and, thus, could not demonstrate a genuine question of material fact as to whether the defendant was present at the time of the assault, and the defendant supported his motion

37

with an affidavit and a copy of an incident report stating that the movant was not involved in the incident and not in that area of the facility at the time of the assault.)

Here, plaintiff and Hamilton's facts conflict as to whether Hamilton instructed Quick to assault plaintiff. Although Hamilton's declaration is made under the penalty of perjury, Hamilton does not submit any documentary evidence to support his claim that he did not retaliate against plaintiff. Further, Hamilton does not refute plaintiff's testimony that plaintiff saw him speak with Quick immediately prior to the August 12, 2022, assault and at the end of the company while he was being assaulted. *See* Dkt. No. 57-14 at 101-105. Rather, Hamilton states that he was "present" at Auburn CF on August 12, 2022, and "assisted plaintiff after the incident while other officers placed the other incarcerated individual in mechanical restraints." Dkt. No. 83-3 at 2. Hamilton does not state where he was before or at the time of the alleged assault.

Viewing the facts in the light most favorable to plaintiff, due to the parties' conflicting statements, a reasonable fact-finder could conclude that Hamilton spoke with Quick prior to the assault, was present at the end of the company and witnessed the assault take place, or that the assault occurred in retaliation for the August 2022 letters and complaints plaintiff wrote to Commissioner Annucci, Captain Gilmore, and DSS Stachowski. *See* Dkt. No. 1 at 23, 27, 31; *Hendriks v. Delutis*, No. 9:20-CV-1035 (MAD/ML), 2023 WL 4740173, at *2 (N.D.N.Y. July 24, 2023) (citing *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citing Anderson, 477 U.S. at 255)) ("In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.). "Therefore, because a genuine issue of material fact exists regarding retaliatory intent it

38

is recommended that [Hamilton's] motion for summary judgment be denied as to Plaintiff's First Amendment retaliation claim[]." *Rodriguez v. Monroe*, No. 9:19-CV-1244 (GTS/CFH), 2021 WL 5095544, at *12 (N.D.N.Y. July 2, 2021), *report and recommendation adopted,* No. 9:19-CV-1244 (GTS/CFH), 2021 WL 4025761 (N.D.N.Y. Sept. 3, 2021); *see also Johnson*, 2011 WL 1097864, at *7; *Louis-Charles*, 2018 WL 5728054, at *10; *McMaster*, 2018 WL 4212033, at *7.

## VI.  **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 83) be **GRANTED IN PART AND DENIED IN PART** as follows:

1)    Insofar as Hamilton seeks dismissal of plaintiff's Eighth Amendment excessive force claim, such motion be **GRANTED**, and such claim be **DISMISSED with prejudice**;

2)    Insofar as Hamilton seeks dismissal of plaintiff's First Amendment retaliation claim, such motion be **DENIED**; it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

 **IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and*

*Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §636(b)(1); FED. R. CIV P. 6(a), 6(e), 72.[11]

Dated:  February 17, 2026
             Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge

---

[11] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id.* § 6(a)(1)(C).